UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

ERIC MATILTON, et al.,
Plaintiffs,

v.

HUMBOLDT COUNTY, et al.,
Defendants.

Case No. 25-cv-01168-RMI

**ORDER ON MOTION TO STRIKE/DISMISS AND MOTION FOR SANCTIONS**

Re: Dkt. Nos. 68, 72, 74, 75

Pending before the court is a motion to dismiss per Federal Rule of Civil Procedure 12(b)(6) or to strike per Rule 14 the first amended third-party complaint and a Rule 11 motion for sanctions. Both motions were filed by Third-Party Defendants Coty Atchison (formerly Schneider), Daniel Gongora, Nightingale Nurses, LLC, and Roes 1 through 50 (collectively, "Third-Party Defendants" or "TPD") against Third-Party Plaintiffs Humboldt County and Kelsey Hawk (collectively, "the County Defendants"). The County Defendants have responded in opposition to both motions, and Third-Party Defendants have replied.

Having carefully considered the parties' submissions, the court concludes that these matters are suitable for resolution without oral argument. N.D. Cal. Civ. L.R. 7-1(b). For the reasons explained herein, Third-Party Defendants' motion to strike/dismiss will be GRANTED IN PART and DENIED IN PART, and their motion for sanctions will be DENIED.

## I. BACKGROUND

### *A. Relevant Factual Background*

This third-party action arises out of a suit brought by the children of Eric Matilton, Sr., who passed away following a suicide attempt while he was detained at the Humboldt County

Correctional Facility (HCCF). His children ("Plaintiffs") are suing Humboldt County, Dr. Christian Agricola, Kelsey Hawk, and several Doe defendants, alleging that his suicide was the result of inadequate mental health care during his detention. Pl.'s Am. Compl, Dkt. 27. The court addressed the factual allegations of the underlying suit more fully in its order on motions to dismiss filed by Humboldt County, Kelsey Hawk, and Dr. Agricola, Order on Mot. to Dismiss, Dkt. 37, but briefly recites the facts relevant to this matter.

Plaintiffs allege that Mr. Matilton had a long and well-documented history of serious mental illness, much of which was known to the County. Pl.'s Am. Compl. 7. Mr. Matilton experienced an acute mental health crisis in November 2023, which ultimately led to his arrest on misdemeanor charges for entering a neighbor's home and swinging a baseball bat while speaking nonsensically. *Id.* at 8.

After his arrest, Mr. Matilton was brought to HCCF and placed in general population. *Id.* at 9. Mr. Matilton did not receive a complete mental health screening during his intake at HCCF, nor were his previous mental health records meaningfully consulted. *Id.* Despite two of Mr. Matilton's healthcare providers calling HCCF to inform them of the history of his mental illness and to request mental health care for him while in custody, Mr. Matilton was given no medication for three days. *Id.* at 9–10. Over the course of the next ten days, Mr. Matilton was prescribed Seroquel but took only half of his scheduled doses, which was documented by HCCF employees. *Id.* at 13. He requested mental health services, sought additional medication, and requested his status be communicated to his mental health provider outside of HCCF. *Id.* at 14. HCCF did not take any action, and Mr. Matilton attempted suicide on November 17. *Id.* at 15. He later died of his injuries. *Id.*

The County Defendants moved to dismiss Plaintiffs' first amended complaint, and Defendant Dr. Agricola moved to dismiss Plaintiffs' sixth cause of action against him. The court granted in part and denied in part the County Defendants' motion and granted Dr. Agricola's motion.

***B. Relevant Procedural Background***

On July 9, 2026, the County Defendants filed a timely amended Third-Party Complaint (hereinafter referred to as "the FATPC") against Third-Party Defendants Coty Atchison, Daniel

United States District Court
Northern District of California

Gongora, Nightingale Nurses, LLC, and Roes 1 through 50. (Dkt. 65) TPD moved to dismiss the FATPC based on Rules 14 and 12(b)(6) of the Federal Rules of Civil Procedure (dkt. 68), also filing a motion for sanctions pursuant to Rule 11 (dkt. 72). The County Defendants responded in opposition to both the motion to dismiss (dkt. 74) and the motion for sanctions (dkt. 75), and TPD replied (dkts. 76, 77). The County Defendants also noted an objection to evidence filed with TPD's Reply to the Opposition to the motion, arguing that TPD misrepresented the record. (Dkt. 78)

In the FATPC, the County Defendants bring six causes of action: (1) equitable indemnity (against each TPD); (2) apportionment of fault (against each TPD); (3) declaratory relief (against each TPD); (4) express indemnity (against Nightingale and Roes 1 through 20); (5) breach of contract (against Nightingale and Roes 1 through 20); and (6) breach of contract (against Nightingale and Roes 1 through 20). (Dkt. 65)

The County Defendants allege that the County and Nightingale Nurses entered into a Professional Services Agreement (PSA) on May 16, 2023. FATPC at 2–3, ¶ 9. Under the PSA, Nightingale and nurses were responsible for providing health care services to Mr. Matilton during his incarceration in the HCCF. *Id.* at 3, ¶ 10. The County Defendants allege that Coty Atchison was "the last care provider who saw and provided care" to Mr. Matilton, *id.*, ¶ 11, and that "if any act or omission occurred while" Mr. Matilton was incarcerated "is found to have caused or contributed to any injury" to him, then it was "actually" the acts or omissions of, or negligent performance of or failure to comply with, TPD, "whether intentional, willful, reckless or negligent, which violated the applicable standard of care and/or the Professional Services Agreement, which caused or contributed to" Mr. Matilton's injuries. *Id.* at 3–4, ¶ 12, 13. The County Defendants believe that if Plaintiffs can provide the injuries alleged, then TPD "are the actual parties legally responsible for these injuries." *Id.* at 4, ¶ 14.

## II. MOTION TO STRIKE UNDER RULE 14

### *A. Legal Standard*

Under Rule 14(a)(1) of the Federal Rules of Civil Procedure, a defending party may implead a third party "who is or may be liable to it for all or part of the claim against it." The rule exists to "promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action

against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). "Leave to file a third-party claim is liberally granted in furtherance of judicial efficiency." *Flodin v. Cent. Garden & Pet Co.*, No. 21-cv-01631-JST, 2024 WL 3641368, at *2 (N.D. Cal. Aug. 2, 2024) (citation modified). A third-party claim, however, "may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative." *United States v. One 1977 Mercedes Benz, 450 SEL*, 708 F.2d 444, 452 (9th Cir. 1983). "It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim." *Id.* "Any party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). "A trial court must act within its sound discretion when determining whether a third-party defendant may be impleaded under Rule 14." *Stewart v. Am. Intern. Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988).

***B. Analysis***

The County Defendants allege that "if any act or omission occurred" during Mr. Matilton's incarceration, "then it was actually the acts or omissions of the Third-party Defendants, whether intentional, willful, reckless or negligent, which caused or contributed" to Mr. Matilton's death and Plaintiffs' alleged injuries. FATPC at 5–6, ¶ 22. They argue that if they were found to be liable in some way, their liability "would be based solely upon a derivative form of liability not resulting from" their conduct, so they would therefore be entitled to partial or complete indemnity from TPD "as the legally responsible parties." *Id.* at 6, ¶ 23.

TPD argue that the FATPC "is the textbook misuse of impleader as a vehicle for a defense." Mot. to Strike/Dismiss at 8. They ask the court to strike the FATPC because the allegations in the FATPC assert that "liability belongs entirely to someone other than the County[,]" which is not the function that Rule 14 impleader is meant to serve. *Id.* at 9.

Here, the question is whether, if the County Defendants are held liable to Plaintiffs for their injuries resulting from Mr. Matilton's death in HCCF, TPD may be liable to the County Defendants in light of any relief Plaintiffs obtain. The substantive basis for Plaintiffs' complaint is that the

County Defendants failed to adequately provide Mr. Matilton with mental health care, and the allegations in the FATPC would transfer any finding of liability into TPD on the grounds that TPD breached the PSA and "actually" caused Mr. Matilton's injuries.

Taking the allegations in the FATPC as true, the court finds that impleader under Rule 14 is proper here. As an initial matter, the County Defendants' claims arise from the same set of operative facts at issue in Plaintiffs' case. *See Stewart*, 845 F.2d at 200 (affirming the district court's dismissal of the third-party complaint where the district court "noted that the basic facts underlying the original complaint and the basic facts underlying the third-party complaint were disparate"). The claims are also derivative as set forth by Rule 14; the County Defendants are seeking to transfer liability to TPD through various avenues, including equitable and express indemnity and breach of contract based on the PSA—which includes an indemnity clause—between the County Defendants and TPD. *See Tom Hussey Photography LLC v. Family Matters In-Home Care LLC*, No. 20-CV-08197-YGR, 2021 WL 5083553, at *2 (N.D. Cal. Nov. 2, 2021) (noting that indemnification and contribution are "the traditional grounds for a third-party action" as they "inherently seek derivative liability"). TPD's Rule 14 challenge is therefore DENIED.

## III. MOTION TO DISMISS UNDER RULE 12(b)(6)

### *A. Legal Standard*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. Rule 12(b)(6) requires dismissal when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). A complaint contains sufficient factual allegations if it pleads enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

When evaluating a motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*

*St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations omitted).

***B. Analysis***

**1. Equitable Indemnity (Claim 1)**

The County Defendants' first claim is for equitable indemnification as to the claims in Plaintiffs' operative complaint brought pursuant to California law only (*i.e.*, the fourth, fifth, sixth, and eighth causes of action). FATPC 5, Dkt. 65. They allege that "if any act or omission occurred" while Mr. Matilton was incarcerated "is found to have caused or contributed to any injury . . . then it was actually the acts or omissions" of TPD "which violated the applicable standard of care and/or the Professional Services Agreement[.]" *Id.* at 5–6, ¶ 22.

TPD argue that the equitable indemnity claim fails because Plaintiffs' complaint does not allege that the County Defendants and TPD are joint tortfeasors, which they contend is required to sustain an equitable indemnity claim, stating that a "third-party complaint cannot manufacture a tort theory the operative complaint does not contain." Third-Party Def.'s Mot. to Strike/Dismiss 18–19, Dkt. 68. TPD further assert that the FATPC fails to plead joint-tortfeasor status and that the County Defendants do not allege "any duty, any breach, any actor-specific conduct, or any causation." *Id.* at 19. In their Opposition, the County Defendants argue that they sufficiently allege the elements of a cause of action for indemnity and that they may alternatively plead equitable and express indemnity per Federal Rule of Civil Procedure 8(d). Third-Party Pl.'s Opp. 14, Dkt. 73.

The doctrine of equitable indemnity "arose in the context of multiple tortfeasors[,]" *Underwriters at Lloyd's Subscribing to Cover Note B1526MACAR1800089 v. Abaxis, Inc.*, 491 F. Supp. 3d 506, 518 (N.D. Cal. 2020), and it "applies only to defendants who are jointly and severally liable to the underlying plaintiff[,]" *Certain Underwriters at Lloyd's of London Subscribing to Policy No. E & O 10873 A v. Gen. Star Indem. Co.*, 339 F. Supp. 3d 930, 932 (E.D. Cal. 2018) (citing *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004)). "The term 'joint tortfeasor' as used in the comparative equitable indemnity context does



United States District Court
Northern District of California

not mean the defendants were 'joined' as tortfeasors by the plaintiff; it is a broad term which includes joint, concurrent and successive tortfeasors." *Gem Devs. v. Hallcraft Homes of San Diego, Inc.*, 213 Cal. App. 3d 419, 431 (Ct. App. 1989); *see also Am. Motorcycle Assn. v. Superior Court*, 20 Cal.3d 578, 607 (1978) (holding that "[a] defendant is generally authorized to file a cross-complaint against a concurrent tortfeasor for partial indemnity on a comparative fault basis, even when such concurrent tortfeasor has not been named a defendant in the original complaint[]"). "There must be some basis for tort liability against the proposed indemnitor and it is generally based on a duty owed to the underlying plaintiff." *Certain Underwriters*, 339 F. Supp. 3d at 932. A claim for equitable indemnity may not lie where recovery is possible under a theory of breach of contract; rather, it requires a tort claim asserted by Plaintiffs for which the proposed indemnitor and indemnitee are joint tortfeasors. *Miller v. Sec. Life of Denver Ins. Co.*, No. 11-cv-1175-PJH, 2012 WL 102979, at *5 (N.D. Cal. Mar. 26, 2012); *see also Underwriters at Lloyd's*, 491 F. Supp. 3d at 517.

Here, the County Defendants sufficiently allege that TPD are joint tortfeasors. The FATPC alleges the same operative facts as Plaintiffs' underlying complaint, and the County Defendants are not alleging an injury distinct from the injury for which they themselves are being sued (*i.e.*, the alleged injuries to Mr. Matilton and to Plaintiffs). *Cf. Turicchi v. Quaid*, No. CV 18-5082-PA, 2019 WL 3213744 (C.D. Cal. Jan. 25, 2019) (dismissing third-party plaintiff's claim for equitable indemnity because the alleged actions of the third-party defendants "have not caused an indivisible injury" to the plaintiffs).

The question, then, becomes whether the County Defendants sufficiently alleged that TPD owed Plaintiffs a duty of care "sounding in tort." *BFGC*, 119 Cal. App. 4th at 853. The FATPC alleges that TPD "were active participants in the health care and treatment" of Mr. Matilton, FATPC 5, ¶ 21, and that TPD "were responsible for providing health care services" to Mr. Matilton, *id.* at 3, ¶ 10. The County Defendants allege that the acts or omissions of TPD "violated the applicable standard of care and/or the" PSA, "which caused or contributed to" Mr. Matilton's and Plaintiffs' injuries. FATPC 5, ¶ 22.

The County Defendants may not assert their claim for equitable indemnity on the grounds

that TPD breached the PSA. *See Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, No. 14-CV-00930-JCS, 2014 WL 4364393, at *5 (N.D. Cal. Aug. 29, 2014) (holding that the third-party plaintiffs, in alleging negligent breach of contract, did not show that the third-party defendants owed the plaintiffs a duty independent of the contract such that the equitable indemnity claim was dismissed). To the extent that the County Defendants' claim is based on that theory, the claim fails. But irrespective of the parties' contractual obligations under the PSA, TPD's breach of its duty of care, according to the allegations in the FAC and FATPC, give rise to liability in tort, which does not preclude the County Defendants' equitable indemnity claim. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that equitable indemnity claim was not precluded where the underlying principal action for damage was in contract rather than in tort). Part of the County Defendants' claim, at least, "is not premised on an implied contract theory, but instead seeks to establish respective liabilities." *Sanders v. County of Santa Cruz*, No. 5:13-CV-03205 EJD, 2014 WL 4773992, at *8 (N.D. Cal. Sept. 19, 2014).

But the issue ultimately fatal to the County Defendants' claim is that the allegations in the FATPC are conclusorily pleaded. Although the FATPC alleges that the acts or omissions of TPD "violated the applicable standard of care[]" in the claims brought pursuant to California law, they do not adduce sufficient facts to support that contention. They do not allege any facts as to how TPD's conduct failed to comport with legally cognizable duties of care, nor how any purported breach was the cause of Mr. Matilton's and Plaintiffs' injuries. Merely alleging that TPD violated some standard of care and that TPD were the final providers to see Mr. Matilton prior to his attempted suicide is not adequate for Rule 12(b)(6) purposes.

For the foregoing reasons, TPD's motion to dismiss the County Defendants' claim for equitable indemnity is GRANTED.

**2. Apportionment of Fault (Claim II)**

The County Defendants' second claim is for apportionment of fault as to the claims in Plaintiffs' operative complaint brought pursuant to California law only (*i.e.*, the fourth, fifth, sixth, and eighth causes of action). FATPC 6. They allege that if they are found liable for Mr. Matilton's injuries and damages for the underlying causes of actions, then TPD "should be required to pay a

share of the judgment which is in proportion to the comparative fault of those Third-party Defendants and to reimburse" the County Defendants for any payments they may make in excess of their proportional share of fault. *Id.* at 7, ¶ 29.

TPD argue that apportionment of fault is not a cognizable cause of action and that "[a]t most," it is "comparative equitable indemnity under another label," failing for the same reasons that the equitable indemnity claim fails. Mot. to Strike/Dismiss 15.

"Courts have allowed complaints and third-party complaints to plead apportionment of fault as a separate cause of action from indemnity." *Parducci v. Overland Solutions, Inc.*, No. 18-CV-07162-WHO, 2020 WL 4193368, at *5 (N.D. Cal. July 21, 2020). Despite this, however, the County Defendants' second claim fails for the same reason its claim for equitable indemnity fails—they have not sufficiently alleged facts that TPD breached any duties of care or were the cause of Mr. Matilton's and Plaintiffs' injuries. Accordingly, TPD's motion to dismiss the County Defendants' claim for apportionment of fault is GRANTED.

**3. Declaratory Relief (Claim III)**

The County Defendants' third claim is for declaratory relief against all TPD. FATPC 7. They allege that there is a dispute over whether TPD will be responsible for any or all of the County Defendants' liability in the event that they are held liable for the fourth, fifth, sixth, and eight causes of action in the Plaintiffs' underlying complaint. FATPC 8, ¶ 34. They seek a declaration by the court as to the their own "rights, duties, and obligations" as well as those of TPD, in addition to whether TPD "have an obligation to defend, hold harmless, and indemnify" the County Defendants per the PSA. *Id.*

TPD argue that the County Defendants' declaratory relief claim fails because it is derivative of other "defective theories." Mot. to Strike/Dismiss 19. They seek dismissal because the requested declaration "rests entirely on the indemnity and contract theories…there is no live dispute for the Court to declare upon." *Id.*

"A claim for declaratory relief requires the plaintiff to demonstrate the existence of an actual controversy regarding the legal rights of the parties." *DXC Tech. Co. v. Gen Digital, Inc.*, No. 23-CV-04818-EJD, 2024 WL 2882565, at *6 (N.D. Cal. June 7, 2024). "The purpose of a declaratory



United States District Court
Northern District of California

judgment is to set controversies at rest before they can cause harm to the plaintiff in the interest of preventive justice, not to remedy harms that have already occurred." *Id.* Declaratory relief, then, acts "prospectively and not merely for the redress of past wrongs." *Id.* Because the underlying causes of action are what are actually being litigated, *Shell Gulf of Mex. Inc. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014), "[d]eclaratory relief is not a stand-alone claim[,]" *Sodexo Mgmt., Inc. v. Old Republic Ins. Co.*, 20-cv-1517-WQH-BGS, 2021 WL 5053063, at *3 (S.D. Cal. Nov. 1, 2021).

Here, the County Defendants' request for declaratory relief rests on the PSA; to the extent that the grounds for this claim are based on equitable indemnity or apportionment of fault, they fail, as the court has dismissed those claims. As will be explained further below, the claim that TPD breached the PSA by failing to indemnify per § 27 of the PSA is not supported by sufficient factual allegations. The alleged breach of § 28, as set forth below in Section III.B.5, is sufficient for purposes of the motion to dismiss. But based on that claim alone, the claim for declaratory relief essentially seeks the same relief sought by the County Defendants under the surviving breach of contract claim. *See Sierra View Loc. Health Care Dist. v. Influence Health, Inc.*, No. 115-CV-00689-DAD-SAB, 2016 WL 2346799, at *8 (E.D. Cal. May 4, 2016) (permitting declaratory relief counterclaim to move forward because "defendant seeks declaratory relief not to settle contractual issues between the parties, but instead to settle the parties' future rights and obligations"); *Black & Veatch Corp. v. Modesto Irrigation Dist.*, 827 F. Supp. 2d 1130, 1149 (E.D. Cal. 2011) (denying motion to dismiss request for declaratory relief where party requested court to determine partial or total indemnity under contractual indemnity clause and where party alleged that it needed a determination as to prospective conduct). The court will therefore exercise its discretion to dismiss this claim, and TPD's motion to dismiss the third claim is GRANTED.

**4. Express Indemnity (Claim IV)**

The County Defendants' fourth claim is for express indemnity as to TPD Nightingale Nursing, LLC and Roes 1 through 20, alleging that per the express terms of the PSA, TPD Nightingale Nursing LLC was obligated "to hold harmless, defend, and indemnify" the County Defendants "from any and all liability arising out of or in connection with," TPD's "negligent

performance of, or failure to comply with, any of the duties and/or obligations under" the PSA. FATPC 8–9, ¶ 36.

TPD argue that the express indemnity claim fails because no breach of an obligation under the PSA was pleaded. Mot. to Strike/Dismiss 12. They contend that the County Defendants merely allege that TPD were "active participants" who "provided care" to Mr. Matilton and do not plead sufficient facts. *Id.* at 13–14. TPD also continue to reference Plaintiffs' operative complaint, asserting that that complaint pleads only direct municipal liability and that the FATPC does not plead a connection between the "claimed loss and contractor-side performance." *Id.* at 13. TPD believe that the Plaintiffs' complaint alleges that the County Defendants were actively negligent, which is not covered by the PSA. *Id.*

"Express indemnity refers to an obligation that arises 'by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances.'" *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1158 (2009) (quoting *Bay Dev., Ltd. v. Superior Ct.*, 50 Cal. 3d 1012, 1029 (1990). A claim for express indemnity is generally enforced "in accordance with the terms of the contracting parties' agreement." *Id.* In other words, courts look to the contract language itself to consider whether the parties clearly and explicitly agreed to indemnify in the event that certain circumstances, as set forth in the contractual language, occur, including for a party's own active negligence. *Id.* "[W]hereas the parties to an express indemnity provision may, by the use of sufficiently specific language, establish a duty in the indemnitor to save the indemnitee harmless from the results of even active negligence on the part of the latter, in the absence of this a provision will be construed to provide indemnity to the indemnitee only if he has been no more than passively negligent. Even an indemnitee who has been only passively negligent may be precluded from indemnification if the contractual provision agreed upon provides indemnity only for liabilities resulting from acts of the indemnitor and not from those of others." *E.L. White, Inc. v. City of Huntington Beach*, 21 Cal. 3d 497, 507 (2016) (citation modified); *see also Bay Dev.*, 50 Cal. 3d at 1033 ("Thus, while parties remain free to enter into contractual agreements providing for total indemnity, governing case law seeks to assure that, when they do, the contractual language is sufficiently specific to alert the potential indemnitor to the full

United States District Court
Northern District of California

scope of its obligation.”).

Here, the PSA’s indemnity clause states:

> CONTRACTOR shall hold harmless, defend and indemnity COUNTY and its agents, officers, officials, employees and volunteers from and against any and all claims, demands, losses, damages and liabilities of any kind or nature, including, without limitation, attorney’s fees and other costs of litigation, arising out of, or in connection with, CONTRACTOR’s negligent performance of, or failure to comply with, any of the duties and/or obligations contained herein, except such loss or damage which was caused by the sole negligence or willful misconduct of COUNTY.

FATPC, Ex. A. § 27A. The County Defendants and TPD are clearly parties to this contract, and TPD are clearly responsible for indemnification *in the event that* TPD negligently perform or fail to perform any of their contractual obligations under the PSA, unless any injuries were caused solely by the County.

The court agrees with TPD that the County Defendants have not adequately pled a breach of the PSA that would give rise to an indemnification claim. Again, conclusory allegations that a breach occurred such that the indemnity clause in the PSA was triggered are not sufficient. The court therefore need not address TPD’s argument as to whether the indemnity clause in § 27 covers the County Defendants’ active negligence or not. Accordingly, TPD’s motion to dismiss the County Defendants’ claim for express indemnity is GRANTED.

**5. Breach of Contract (Claims V & VI)**

The County Defendants’ fifth and sixth causes of action are for breach of contract against Nightingale Nursing, LLC and Roes 1 through 20. FATPC 10, 12. In the fifth cause of action, which is based on an alleged breach of § 27(A) of the PSA (the indemnity clause), they allege, in addition to the allegations previously mentioned, that they “tendered this claim” to TPD Nightingale Nursing, LLC pursuant to the PSA but that Nightingale “declined the tender” and has failed to “hold harmless, defend, and indemnify” as required by the PSA. *Id.* at 12, ¶¶ 51–53. The County Defendants say that the alleged breach of § 27 has caused them to suffer damages, “including incurring costs, consultants’ fees, attorney’s fees and other litigation fees in defense of this action” as well as “the costs associated with any settlement or damages in this action were they to occur.” *Id.* ¶ 54. The sixth cause of action is based on an alleged breach of § 28 of the PSA, which required Nightingale

"to acquire insurance for the benefit of" the County Defendants "that would provide coverage for claims such as those made in Plaintiffs' Complaint. *Id.* at 14, ¶ 62. The County Defendants tendered this claim to Nightingale and to the insurance provider Nightingale provided "purportedly pursuant to" § 28 of the PSA, which was rejected, resulting in the County Defendants incurring damages. *Id.* ¶ 63–65.

TPD again argues that the theory advanced by Plaintiffs in the underlying suit is not of "passive negligence," but instead is active negligence, which, according to TPD, is not included in the PSA's indemnity clause. Mot. to Strike/Dismiss 16. TPD contend that this means that Nightingale's responsibility to obtain insurance under § 28 does not transfer it into an "exclusive risk-transfer mechanism[.]" *Id.* Further, TPD assert that the sixth cause of action fails "because it supplies no factual content connecting the contractual obligation to a breach." *Id.*

Under California law, the "cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal App. 4th 1375, 1391 n.6 (2004).

Here, the County Defendants sufficiently plead the existence of a contract, demonstrated through the attached PSA, as well as the resulting damages of an alleged breach for both claims. With regards to the alleged breach of § 27, however, the FATPC lacks facts as to what constitutes Nightingale's breach such that indemnity would be required. An allegation that TPD negligently performed or failed to comply with their obligations under the PSA, without any facts adduced, will not suffice. *See* FATPC 11, ¶ 50.

As for the alleged breach of § 28, the court finds that the County Defendants sufficiently plead that TPD failed to acquire insurance, as required by that section of the PSA, that would provide coverage for the kind of claims set forth by Plaintiffs in their underlying complaint. *Id.* at 14, ¶ 65.

TPD's motion to dismiss the County Defendants' fifth claim for breach of contract is GRANTED, and the motion to dismiss the sixth claim for breach of contract is DENIED.

## IV. MOTION FOR SANCTIONS UNDER RULE 11

TPD move for sanctions under Rule 11(b)(3) based on three portions of the FATPC. They

first argue that the FATPC does not advance any factual allegation of negligence or deficient clinical care to Gongora, the FATPC's attribution of fault "collectively to all Third-Party Defendants." Third-Party Def.'s Mot. for Sanctions 4–5, Dkt. 74. TPD's second argument in support of sanctions is that the records available to the County Defendants at the time they filed the FATPC "did not furnish an objectively reasonable factual basis to continue attributing deficient clinical or medication-related care collectively to all three Third-Party Defendants after a reasonable inquiry." *Id.* at 5. This is so, they argue, because the FATPC "identifies neither a deficient act by Atchison nor any factual basis to impute deficient care to Gongora or Nightingale[]" when it merely alleges that Atchison was the last provider to see Mr. Matilton. *Id.* Finally, TPD argue that paragraph 11 of the FATPC, which alleges that Atchison was the last care provider to see and provide care to Mr. Matilton before his attempted suicide and that TPD were responsible for providing care to him, is deficient pursuant to Rule 11(b)(3) because it does not "bridge the gap between participation in Decedent's care" and the FATPC's assertion that "all Third-Party Defendants committed acts or omissions that violated the standard of care" and caused or contributed to Mr. Matilton's injuries and death. *Id.* at 6.

For their part, the County Defendants request the court to deny the motion and cross-move for sanctions against TPD.[1] Third-Party Pl.'s Opp. 1, Dkt. 75. They argue that Third-Party Defendants' motion "is based upon misrepresentations by omission" and is "brought for improper purposes." *Id.* Specifically, the County Defendants assert that the sanctions motion "is part of a pattern of abusive conduct[,]" including "feigning interest in a meet and confer to attempt to gain a tactical advantage of a motion to dismiss[]"; "filing a meritless Rule 11 Motion in order to impermissibly put disputed 'evidence' in front of the Court for a pending motion to dismiss[]"; "making discovery demands and discovery sanctions threats that have no legal basis[]"; "attempting to use their improper discovery demands, discovery sanction threats, and improper Rule 11 motion to leverage more favorable settlement[]"; and "failing to alert the Court to the extensive meet and

---

[1] In their Opposition, the County Defendants request that the court issue sanctions against TPD. Pursuant to local rules, any motion for sanctions "must be separately filed[.]" N.D. Cal. Civ. L.R. 7-8(a). Because the County Defendants did not separately file a cross-motion for sanctions, the court does not consider their request for sanctions here.

confer[.]" *Id.* at 14.

Federal Rule of Civil Procedure 11(b) requires, among other things, an attorney or unrepresented party to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" factual contentions in a pleading, written motion, or other paper "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). If "the court determines that Rule 11(b) has violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

"It is now clear that the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

Where, as here, sanctions are sought based on a complaint, the court must conduct a two-prong inquiry to determine: "(1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted a 'reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). Even a weak basis for an allegation, if plausible, will satisfy this "low bar." *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011) ("Rule 11 sets a low bar[.]"); *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117–18 (9th Cir. 2001) (reversing district court's sanctions order and noting that the sanctioned attorney "had *some* plausible basis, albeit quite a weak one," for the challenged argument).

With regards to the first prong, the court finds that the FATPC is not baseless from an objective perspective. "Even assuming that the factual basis is weak and might fail to withstand a motion to dismiss, the first prong of the Rule 11 analysis is not met as long as the complaint is supported by some factual basis from an objective perspective." *Frost v. LG Elecs. Inc.*, No. 16-CV-05206-BLF, 2017 WL 2775041, at *3 (N.D. Cal. June 27, 2017) (citing *United Nat. Ins. Co.*,

United States District Court
Northern District of California

242 F.3d at 1117). As discussed above, the FATPC does not set forth sufficient facts to withstand TPD's motion to dismiss, but that does not mean that the County Defendants are subject to sanctions. The County Defendants advance several claims based on a contract between Nightingale Nurses, LLC and the County—the PSA—that could plausibly be pled; it is not "objectively baseless" for the County Defendants to assert claims against the health care providers who allegedly saw and treated Mr. Matilton before he attempted suicide. And as to TPD's assertion that counsel for the County Defendants did not conduct a reasonable inquiry because the County Defendants have access to medical records and internal review of the circumstances of Mr. Matilton's death and should have withdrawn claims based on these records, TPD is attempting to use the motion for sanctions to litigate on the merits. This is not a case where the County Defendants assert claims for a breach of a contract provision that does not exist and could have been discovered upon reading the contract, or where they make bald assertions as to TPD's conduct that have no factual tether to the underlying claims. *See, e.g.*, *Gin v. Chicago Ins. Co.*, 106 F.3d 407 (9th Cir. 1997).

Despite the lack of sufficient facts in the FATPC such that all their claims may withstand the Rule 12(b)(6) motion, the FATPC is not so devoid of any factual tether for its proffered claims. TPD successfully advanced its argument in its motion to dismiss; they now waste the court's time and resources by filing a meritless motion for sanctions when their arguments as to the sufficiency of the FATPC were properly advanced in its motion to dismiss.

For this reason, TPD's motion for sanctions is DENIED.

## V. CONCLUSION

TPD's motion to strike under Rule 14 is DENIED. TPD's motion to dismiss claims 1 through 5 under Rule 12(b)(6) is GRANTED with LEAVE TO AMEND; the motion to dismiss the sixth claim is DENIED. TPD's motion for sanctions is DENIED.

The County Defendants may amend their third-party complaint within fourteen days of this order.

**IT IS SO ORDERED.**

Dated: October 22, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California